**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BARBARA LYNN WEST,** | : | **Civil No. 3:23-CV-838** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **FRANK BISIGNANO,** | : | |
| **Commissioner of Social Security**[1] | : | |
| | : | |
| **Defendant.** | : | |

**MEMORANDUM OPINION**

## I. Introduction

For claimants seeking disability insurance benefits pursuant to Title II of the Social Security Act, two benchmarks define the temporal scope of their claim. The first of these critical dates is the alleged date of onset of disability, which defines when a claimant asserts that disability began. The relevant period for a disability inquiry is then capped by a second benchmark: the date the claimant was last insured under the Act. In order to obtain disability insurance benefits, it must be shown that

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

between the date of onset and the date last insured the claimant became totally disabled.

Applying these benchmarks the instant case involves a narrow window of alleged disability. The plaintiff, Barbara West, filed a Title II disability insurance claim on April 18, 2018, alleging an onset of disability beginning on July 10, 2017. West's date last insured was March 13, 2018. Therefore, West's disability claim is cabined and confined to this eight month period. Accordingly, the question before the Administrative Law Judge (ALJ) in West's case was whether she had met the exacting standard for showing that she was disabled during this narrow time frame spanning from July 2017 through March 2018.

The ALJ who heard this case on remand concluded that she had not and West now challenges this decision arguing that the ALJ erred in evaluating the medical opinions offered by her treating caregiver and failed to recognize the severity of her emotional impairments. In considering these arguments, we are enjoined to apply a deferential standard of review, a standard of review which simply asks whether there is "substantial evidence" supporting the ALJ's determination. With respect to this legal guidepost, as the Supreme Court has explained:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-

> evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

In the instant case, after an independent review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" id., we find that substantial evidence supported the ALJ's findings. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner.

## II. Statement of Facts and of the Case[2]

This is Barbara West's second Social Security appeal, her case having been previously remanded by this Court for further consideration of the medical evidence.

---

[2] This appeal has an extensive administrative record. (Tr. 1-3678). However, much of this record relates to medical treatment which falls outside the relevant time frame. (Tr. 1018-3678). Therefore, our factual recital will focus on the treatment notes that pertain to the time frame of this disability claim July 2017 to March 2018.

(Tr. 894, 897-917). On April 9, 2018, Barbara West applied for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging disability beginning July 10, 2017. (Tr. 10). In her application West stated that she was totally disabled due to diabetes, degenerative disc disease of the lumbar spine and mild emotional impairments. (Tr. 844). For purposes of her Title II claim, West's date last insured under the Act was March 31, 2018. (Tr. 843). West was born on March 10, 1972, and was 46 years old, which is defined as a younger individual by the Commissioner's regulations, on the date last insured. (Tr. 852). She had a high school education and had previously worked as a machine operator/plate molder. (Id.)

### A. West's Physical Impairments and Activities of Daily Living

During the pertinent time period when West was seeking disability, from July 2017 through March 2018, the plaintiff was self-employed and worked part-time as a hairdresser. (Tr. 65, 869). In October of 2017, West reported that she was able to stand long enough at work to get through a haircut, (Tr. 247), and in January of 2018 she stated that she is still standing on her feet all day as a hair stylist. (Tr. 284).

West's treatment records during the relevant time frame confirmed her physical impairments but frequently described those conditions in terms which were not wholly disabling. For example, between August and November 2017, West

underwent physical therapy for her back and leg pain with Phoenix Rehabilitation and Health Services. (Tr. 224-269). West's physical therapy treatment records frequently described her as able to perform exercise without complaints of pain and consistently described her progress and tolerance of treatment as good. (Tr. 229, 230, 240, 243, 249). These treatment notes also documented improvement in her level of comfort with exercise, reporting that physical therapy either reduced or totally "abolished" her discomfort. (Tr. 233, 236, 252). By November 2017 West stated that she was experiencing barely any pain, (Tr. 254), and was describing for her caregivers her ability to work as a hair stylist and perform household tasks like laundry. (Tr. 247, 251).

A December 2017 assessment and evaluation by Columbia Pain Management likewise reported that West worked part-time. (Tr. 273). At the time of this assessment, West was in no acute distress and walked normally but displayed tenderness in her lower back. (Tr. 274). The physician recommended exercise, as tolerated, and NSAIDs for discomfort and found that she was potentially a good candidate for nerve block treatment. (Tr. 274-75).

Beginning in December of 2017, and continuing through February 2018, West also treated with Karen Buerger-Talacka, D.C. (Tr. 280-289). While the chiropractor's treatment notes identified lower back pain which radiated down her

left leg and confirmed a restricted range of motion, West regularly described slight to significant improvement in her condition during this course of this chiropractic care. (Id.) West also twice indicated that despite her impairments she was able to stand through the workday while working as a hair stylist. (Tr. 284, 287).

In addition to these specialists, West treated with the Family Practice Center between July 2017 and March 2018 where she was seen by Dr. Vikas Passi and a number of physician assistants, including Heather Yoost. (Tr. 368-395). These relevant treatment notes documented a diagnosis of left side sciatica, and noted one instance of an antalgic gait, (Tr. 382), but also frequently noted that West was currently working. (Tr. 370, 382, 389). With respect to her physical impairments, the treatment notes were largely unremarkable; they documented sciatica pain, but on occasion reported that this pain had improved, (Tr. 381), and characterized the condition as an off and on issue. (Tr. 388).

Imaging tests in August and November of 2017 identified mild to moderate degenerative discs disease in her lumbar spine at L 4-5 and described "mild" and "tiny" spinal abnormalities. (Tr. 494, 496).

### B. West's Emotional Impairments

West's primary care practice also documented a longstanding history of depression on her part. (Tr. 369). However, the pertinent treatment records indicated

that between July 2017 and March 2018 West's depression was in partial remission. (Tr. 372, 378, 384). The family practice treated this condition conservatively through medication, and it was reported during this time frame that her depression was "controlled" and "well controlled" through medication. (Tr. 379, 384). There was no indication that West received additional, or more intensive, care for her depression during the relevant period.[3]

### C. The Medical Opinion Evidence

Given this equivocal clinical history, the plaintiff's records were assessed by State agency medical and psychological consultants. (Tr. 91-102). On July 3, 2018, Dr. Dennis Gold, PhD, concluded that West's depression was not a severe impairment, finding based upon her clinical history that it imposed no more than mild limitations upon her ability to meet the demands of the workplace. (Tr. 95-96). Dr. Chankun Chung, in turn, concluded on July 12, 2018, that West could meet the exertional demands of light work. (Tr. 97-99).

With respect to the severity of West's emotional impairments, there were no other medical opinions beyond Dr. Gold's. As for West's physical constraints, Heather Yoost, PA-C, one of West's treating caregivers opined in April of 2019,

---

[3] Following West's date last insured in May of 2018 she reported more severe depression and received additional treatment. However, intake notes prepared at that time disclosed that West stated that she was "only happy when at work." (Tr. 6133).

more than a year after her date last insured, that West was wholly disabled. (Tr. 605-609). According to PA-C Yost, West could lift no more than ten pounds, could only stand or walk for less than two hours per day, would be off task 25% of the time, and would miss more than four days of work each month. (Id.) In May 2019, PA-C Yost further opined in a cursory fashion that her April 2019 description of West's impairments also described the state of her health in July 2017. (Id.) PA-C Yost did not reconcile her extreme medical opinion with her treatment notes, which recorded that West was working in 2017 and 2018.

It was against this medical background that West's case came to be considered for a second time on remand by the ALJ.

### D. The ALJ Hearing and Decision.

A second hearing was conducted in this case on November 30, 2022, at which West and a vocational expert testified. (Tr. 859-889). Ms. West's testimony, which was provided more than four years after her date last insured, relied in part upon subsequent medical events to support her claim of disability. For example, the plaintiff noted that she had undergone surgery in December of 2019 and had begun using a cane to ambulate in 2022, long after her date last insured. (Tr. 864, 872). West also acknowledged working part-time has a hairdresser during the period when she claimed to be disabled. (Tr. 868).

Following this hearing, on February 1, 2023, the ALJ issued a decision in West's case denying her disability claim. (Tr. 838-853). In that decision, the ALJ first concluded that West last met the insured status requirements of the Social Security Act on March 31, 2018, and had not engaged in substantial gainful activity during the period from her alleged onset date of July 10, 2017, through her date last insured of March 31, 2018. (Tr 843). In reaching this conclusion the ALJ acknowledged that West worked part-time at her own business for three years, and stopped working altogether in December 2019, but found that this work did not reach the level of substantial gainful activity and proceeded with the sequential analysis of her claim. (Id.)

At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that West's diabetes and degenerative disc disease of the lumbar spine were severe impairments. (Tr. 844). The ALJ also considered the plaintiff's depression but concluded that this impairment was non-severe. In making this finding, the ALJ focused upon the medical record relating to the pertinent time period, from July 2017 to March 2018. As the ALJ explained:

> The claimant's medically determinable mental impairment of depression did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and was therefore non-severe (Exhibit 4F).

In making this finding, the undersigned has considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.

Here, during the relevant period of July 10, 2017, through March 31, 2018, the claimant had no formal mental health treatment or psychiatric inpatient hospitalization. Mentally, she was diagnosed with depression, she was prescribed medication by her primary care provider, and her treating records reflect no mental status examinations prior to the date last insured. In addition, in December 2017 (subsequent to the date last insured), her treatment record with Family Practice Center showed her depression was well controlled with Sertraline (Exhibit 4F/p. 96). At her one time visit with Dr. Mallhi, pain management specialist, she was noted to be alert and oriented, had good eye contact, and her mood and affect were full range (Exhibit 2F). Mentally, she could tend to her personal care, and she was independent in her daily activities. On her function report she stated that she could count change, pay bills, and manage a checking and savings account. She noted that she did not go out like she used to, but she was working part-time, and spoke to others on the telephone almost every day. She reported that she did not need reminders to go places or to take her medications. She could follow written or spoken instructions well. She has never been fired from a job for not getting along with others (Exhibit 5E). She prepared simple meals, cleaned, did laundry, drove, shopped, cared for the pets in her household, worked part time, and she enjoyed doing crafts, reading, and watching television, albeit all with limitations (Exhibit 5E, Hearing Testimony). Therefore, the undersigned finds no more than mild limitation in the paragraph "B" criteria considering the claimant's level of functioning and lack of mental health treatment.

Because the claimant's medically determinable mental impairment caused no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it was non severe (20 CFR 404.1520a(d)(1)).

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.
>
> The undersigned considered the opinion from Dr. Gold that the claimant's depression causes no more than mild mental limitations and is considered non-severe as of the date last insured (Exhibit 1A/5, 6). The undersigned finds this persuasive as the record shows the claimant is diagnosed with depression and prescribed medication from Family Practice Center providers; however, during the relevant period between July 10, 2017, and March 31, 2018, there are no mental status examinations and only note subjective complaints (Exhibit 4F/p. 81-102). She managed her own personal care, she prepared simple meals, cleaned, did laundry, drove, shopped, cared for the pets in her household, worked part-time, and she enjoyed doing crafts, reading, and watching television, albeit all with limitations (Exhibit 5E, Hearing Testimony). The undersigned finds the record supports the claimant's mental impairment was non-severe during the relevant period.

(Tr. 844-845).

At Step 3, the ALJ determined that West did not have an impairment or combination of impairments that met or medically equaled the severity of one of the disability listing impairments. (Tr. 845-847).

Between Steps 3 and 4, the ALJ then fashioned a residual functional capacity ("RFC") for the plaintiff which considered all of her impairments as reflected in the medical record, and found that:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could occasionally stoop, balance, kneel, crouch, crawl, or climb ramps and stairs, but should avoid climbing ladders or scaffolds. She should avoid unprotected heights, but could tolerate occasional exposure to extreme cold temperatures and wetness. She could occasionally use her bilateral lower extremities to operate foot controls and pedals. She could occasionally bend and twist at the waist.

(Tr. 847) (emphasis in original).

In reaching this conclusion the ALJ once again specifically focused upon the relevant time frame, and discussed the medical evidence, explaining that:

> Overall, the longitudinal evidence of record does not support the claimant's allegations concerning the intensity, persistence, and limiting effects of her symptoms. Physically she was diagnosed with type II diabetes mellitus years before her alleged onset date of July 10, 2017. During the relevant period between July 10, 2017, through March 31, 2018, the record shows her A1C was elevated, but she reported she was not compliant with a diet. The record also shows she had no complaints, no side effects and no reports of hyperglycemic or hypoglycemic events (Exhibit 4F/p. 96, 81-102). Her physical examination showed she had positive monofilament and positional sense noted on her feet, and no skin lesions on her feet or between her toes (Exhibit 4F/p. 82). She was also diagnosed with degenerative disc disease of the lumbar spine and while she complained of pain in her lower back, left buttocks and left leg, the treatment had been relatively conservative. She had one pain management visit with Dr. Mallhi, and she tried physical therapy two times a week for a few months, but stated it caused her more pain (Exhibit 1F, 2F). She also attended seven chiropractic visits that she reported helped provide significant relief from her pain. Her physical exam consistently showed that she had some tenderness to palpation in the left paralumbar musculature and left SI joint, and with the extension of the left leg. However, she had no

> motor, sensory or reflex deficits noted. Examination findings showed no gait abnormality and no use of assistive device (Exhibit 2F, 4F). The record fails to reflect the use of a cane or support that the claimant medically required a cane to ambulate during the relevant period between July 10, 2017, and March 31, 2018.
>
> In addition to the above medical evidence of record, the undersigned considered the claimant's activities of daily living during the relevant period, she managed her own personal care, she prepared simple meals, cleaned, did laundry, drove, shopped, cared for the pets in her household, worked part-time, and she enjoyed doing crafts, reading, and watching television, albeit all with limitations (Exhibit 5E, Hearing Testimony). While none of these activities alone is dispositive, taken together they suggest that the claimant is capable of performing work activity on a sustained and continuous basis within the above parameters. The record supports the light residual functional capacity. This level of activity is not consistent with someone alleging such severe and debilitating symptomatology.

(Tr. 850).

The ALJ also assessed the medical opinion evidence relating to West's impairments, noting that:

> The undersigned also considered the opinion of the State agency medical consultant, Dr. Chung, who indicated that the claimant could perform a range of light exertional work during the relevant period from July 10, 2017, through March 31, 2018 (Exhibit 1A/7 - 9). The undersigned finds this opinion generally persuasive, as it is consistent with the medical evidence of record and activities of daily living previously discussed. During this relevant period, she managed her own personal care, she prepared simple meals, cleaned, did laundry, drove, shopped, cared for the pets in her household, worked part time, and she enjoyed doing crafts, reading, and watching television, albeit all with limitations (Exhibit 5E, Hearing Testimony). However, based on the complete record at the hearing level addressing the relevant period, in combination with the hearing testimony, the undersigned afforded

additional postural and environmental limitations to prevent exacerbations of her physical impairments.

The undersigned also considered the opinion from Heather Yost, PA.C. that the claimant could sit for 15 minutes at a time for a total of four hours, and stand/walk for 15 minutes at one time for a total of less than two hours. Ms. Yost further opined the claimant will need unscheduled breaks every two hours for 10 minutes. Ms. Yost stated the claimant could rarely lift up to 10 pounds, rarely twist, crouch or squat, occasionally climb stairs, and never stoop or bend or climb ladders. Ms. Yost, noted the claimant would be off task 25% or more during the workday, and absent from work more than four day per month (Exhibits 8F, 10F). The undersigned also considered the supplemental opinion from Ms. Yost in Exhibit 10F and finds that unpersuasive. Ms. Yost stated on May 14, 2019, that the limitations opined in Exhibit 8F applied as of July 16, 2017, based on visit with Dr. Passi in August 2017 where she stated her back pain started three weeks earlier. The undersigned finds the opinions from Heather Yost, PA.C. for the period from July 10, 2017, through March 31, 2018, is unpersuasive. During that relevant period, the physical findings on longitudinal examinations do not disclose debilitating findings. Her physical examinations consistently showed that she had some tenderness to palpation in the left paralumbar musculature and left SI joint, and with the extension of the left leg. However, she had no motor, sensory or reflex deficits noted, and findings showed no gait abnormality, other than the antalgic gait noted in the October 2017 visit where she reported the pain medications were helping her pain, and no documented use of an assistive device (Exhibits 2F, 4F). The limitations opined by Ms. Yost are not supported by physical findings at her own examinations, nor do they account for claimant's ability to work at her prior position, albeit on a part-time basis. While this work was not substantial gainful activity, it shows an ability to function. The physical demands of that work do not correlate with the extreme limitations provided. In addition, during this relevant period, she managed her own personal care, she prepared simple meals, cleaned, did laundry, drove, shopped, cared for the pets in her household, worked part time, and she enjoyed doing crafts, reading, and watching television, albeit all with limitations (Exhibit 5E, Hearing Testimony). The undersigned finds the longitudinal record supports

> that during the relevant period, the claimant could perform light work as outlined above.

(Tr. 851).

Based upon this analysis, the ALJ found that:

> [A]fter considering the record as a whole, including the objective diagnostic tests and clinical findings on physical and mental examinations, the claimant's longitudinal treatment history, and her documented activities of daily living, the undersigned finds that during the relevant period of July 10, 2017, through March 31, 2018, the claimant was capable of performing a range of light work within the above parameters.

(Tr. 852).

Having made these findings, the ALJ concluded that West could not perform her past relevant work but that there were other jobs that existed in significant numbers in the national economy that she could perform. (Tr. 852-853). Accordingly, the ALJ concluded that West had not met the stringent standard of disability set by law during the period between July 2017 and March 2018, and denied this claim. (Id.)

This appeal followed. (Doc. 1). On appeal, West argues the ALJ erred in evaluating the opinion of PA-C Yost, and in the evaluation of her emotional impairments. These issues are fully briefed by the parties and are, therefore, ripe for resolution.

Upon consideration, with our review confined to the limited period of claimed disability and cabined by a highly deferential standard of review, we find that substantial evidence supported the ALJ's findings that these impairments were not fully disabling. Accordingly, we will affirm the decision of the Commissioner.

## III. Discussion

### A. Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. § 405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be

"something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has recently underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D.Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review, "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather, our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court

requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice, ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

This principle applies with particular force to legal challenges, like the claim made here, based upon alleged inadequacies in the articulation of a claimant's mental RFC. In our view, when formulating a mental RFC the ALJ does not need to rely upon any particular form of words. Further, the adequacy of the mental RFC is not gauged in the abstract. Instead, the evaluation of a claimant's ability to undertake the mental demands of the workplace will be viewed in the factual context of the case,

and a mental RFC is sufficient if it is supported by a valid explanation grounded in the evidence.

### B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); see also 20 C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3)

whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an

assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration

when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this

burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

**C. Legal Benchmarks for the ALJ's Assessment of Medical Opinions**

The plaintiff filed this disability application following a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations which defined

medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However, in March of 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially, and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis. As one court as aptly observed:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).
>
> Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.

> An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).
>
> Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions. Judicial review of this aspect of ALJ decision-making is still guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler

v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015); Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016). Finally, where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings, 129 F.Supp.3d at 214–15.

**D. The Commissioner's Decision Will Be Affirmed.**

In the instant case, the plaintiff alleges the ALJ erred in failing to afford

greater persuasive power to the treating source opinions of PA-C Yost, and in the assessment of the severity of West's depression. In considering these arguments, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce, 487 U.S. at 565. Judged against these deferential standards of review, we find that substantial evidence supported the RFC assessment in this case. Therefore, we will affirm this decision.

The plaintiff first launches a multi-faceted challenge to the ALJ's evaluation of West's emotional impairments arguing that the ALJ erred both in concluding that West's depression was non-severe and in failing to incorporate any mental limitations into the RFC fashioned in this case. While we regard this as a somewhat close question, given the deferential standard of review we must apply, and the narrow temporal scope of West's claim, we are constrained to affirm this aspect of the ALJ's decision.

At the outset, we find that substantial evidence supported the ALJ's Step 2 determination that between July 2017 and March 2018 West's mental impairments were not severe. As this Court has noted, "[a]n impairment significantly limits a Plaintiff's physical or mental abilities when its effect on the Plaintiff's ability to perform basic work activities is more than slight or minimal. . . . An individual's basic mental or non-exertional abilities include the ability to understand, carry out and remember simple instructions, and respond appropriately to supervision, coworkers, and work pressures." Reichling v. Comm'r of Soc. Sec., No. 3:12-CV-01069, 2014 WL 3368823, at *16 (M.D. Pa. July 9, 2014) (citing 20 C.F.R. §§ 404.1545(c) and 416.945(c)). These four broad functional areas are known as the "paragraph B" criteria.

In determining that West did not suffer from any severe mental impairments between July 2017 and March 2018, the ALJ stated:

> Here, during the relevant period of July 10, 2017, through March 31, 2018, the claimant had no formal mental health treatment or psychiatric inpatient hospitalization. Mentally, she was diagnosed with depression, she was prescribed medication by her primary care provider, and her treating records reflect no mental status examinations prior to the date last insured. In addition, in December 2017 (subsequent to the date last insured), her treatment record with Family Practice Center showed her depression was well controlled with Sertraline (Exhibit 4F/p. 96). At her one time visit with Dr. Mallhi, pain management specialist, she was noted to be alert and oriented, had good eye contact, and her mood and affect were full range (Exhibit 2F). Mentally, she could tend to her personal care, and she was independent in her daily activities. On her

function report she stated that she could count change, pay bills, and manage a checking and savings account. She noted that she did not go out like she used to, but she was working part-time, and spoke to others on the telephone almost every day. She reported that she did not need reminders to go places or to take her medications. She could follow written or spoken instructions well. She has never been fired from a job for not getting along with others (Exhibit 5E). She prepared simple meals, cleaned, did laundry, drove, shopped, cared for the pets in her household, worked part time, and she enjoyed doing crafts, reading, and watching television, albeit all with limitations (Exhibit 5E, Hearing Testimony). Therefore, the undersigned finds no more than mild limitation in the paragraph "B" criteria considering the claimant's level of functioning and lack of mental health treatment.

Because the claimant’s medically determinable mental impairment caused no more than “mild” limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant’s ability to do basic work activities, it was non severe (20 CFR 404.1520a(d)(1)).

The limitations identified in the “paragraph B” criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the “paragraph B” mental function analysis.

The undersigned considered the opinion from Dr. Gold that the claimant’s depression causes no more than mild mental limitations and is considered non-severe as of the date last insured (Exhibit 1A/5, 6). The undersigned finds this persuasive as the record shows the claimant is diagnosed with depression and prescribed medication from Family Practice Center providers; however, during the relevant period between July 10, 2017, and March 31, 2018, there are no mental status examinations and only note subjective complaints (Exhibit 4F/p. 81-102). She managed her own personal care, she prepared simple meals,

> cleaned, did laundry, drove, shopped, cared for the pets in her household, worked part-time, and she enjoyed doing crafts, reading, and watching television, albeit all with limitations (Exhibit 5E, Hearing Testimony). The undersigned finds the record supports the claimant's mental impairment was non-severe during the relevant period.

(Tr. 844-845). In our view, substantial evidence supported this Step 2 determination during the relevant time frame. Therefore, we are obliged to affirm this conclusion.

West also insists that the ALJ erred by failing to include any mental restrictions in the RFC which was crafted in this case. To be sure, as a general matter, an ALJ must consider limitations and restrictions associated with all of a claimant's impairments, both severe and non-severe, when formulating the RFC. 20 C.F.R. § 404.1545(a)(2). See Kich v. Colvin, 218 F. Supp. 3d 342, 355–56 (M.D. Pa. 2016). However, "the ALJ's consideration of the individual's non-severe impairments does not amount to a requirement that the ALJ must include limitations in the RFC associated with mild impairments." Weidner v. Kijakazi, No. CV 20-1250-MN, 2022 WL 610702, at *9 (D. Del. Feb. 1, 2022), report and recommendation adopted, No. CV201250MNSRF, 2022 WL 610678 (D. Del. Feb. 16, 2022) (citing Smith v. Comm'r of Soc. Sec., 2016 WL 3912850, at *9 (D.N.J. July 19, 2016)). Instead, the requirement that an ALJ must explain the reasons for excluding mild mental functional limitations is cabined by the Third Circuit's holding in Hess that an ALJ's mental RFC assessment should be upheld "as long as the ALJ offers a 'valid

explanation,'" for that assessment. Hess v. Comm'r Soc. Sec., 931 F.3d 198, 211 (3d Cir. 2019). On this score, an ALJ offers a valid explanation of a mental RFC when the ALJ highlights factors such as mental status examinations and reports that revealed that the claimant could function effectively; opinion evidence showing that the claimant could work; and the claimant's activities of daily living. Hess, 931 F.3d at 214. See also Shaffer v. Colvin, 2014 WL 4925067, at *5 (W.D. Pa. Sept. 30, 2014) ("It is clear from the record that the ALJ adequately considered all of the relevant medical evidence, as well as plaintiff's reported activities, in assessing plaintiff's residual functional capacity, and that he incorporated into his finding all of the limitations that reasonably could be supported by the medical and other relevant evidence."); McCafferty v. Astrue, 2008 WL 1869282, at *4 (E.D. Pa. Apr. 25, 2008) (finding that the requirements of SSR 96-8p were satisfied by ALJ's narrative discussion of the claimant's functional limitations in the context of the objective medical evidence, doctors' notes and opinions, the claimant's activities of daily living, and the claimant's subjective complaints).

In the instant case, the ALJ's decision not to include mental limitations in the RFC rested upon the fact that the clinical evidence showed no significant impairment in West's functioning during the relevant period; West actually worked, albeit part-time; and the sole medical opinion held that her mild impairments were non-severe.

While the ALJ's treatment of this issue certainly could have been more fulsome given the paucity of evidence relating to her mental state from July 2017 to March 2018, we are compelled to conclude that this decision was both adequately articulated and supported by substantial evidence.

The plaintiff also challenges the ALJ's evaluation of the medical opinion evidence, arguing that greater persuasive power should have been given to the extreme limitations opined by PA-C Yost. But this argument fails under the new paradigm which governs the evaluation of medical opinion evidence. Indeed, as previously explained, "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler, 667 F.3d at 361.

As we have noted, PA-C Yost's opinion was rendered well after the relevant time frame, although this medical source attempted in a cursory manner to relate the opinion back to the pertinent time frame. This is significant since medical opinions which describe a claimant's condition outside the relevant timeframe have "little, if any, relevance to whether [the plaintiff] was disabled during [the relevant] time. . . ." Zirnsak v. Colvin, 777 F.3d 607, 614 (3d Cir. 2014). Further, when considering a medical opinion the ALJ may discount that opinion when it conflicts with other objective tests or examination results. Johnson v. Comm'r of Soc. Sec., 529 F.3d

198, 202–03 (3d Cir. 2008). Likewise, an ALJ may conclude that discrepancies between the treating source's medical opinion, and the doctor's actual treatment notes, justifies giving a treating source opinion little weight in a disability analysis. Torres v. Barnhart, 139 F. App'x 411, 415 (3d Cir. 2005). Finally, "an opinion from a treating source about what a claimant can still do which would seem to be well-supported by the objective findings would not be entitled to controlling weight if there was other substantial evidence that the claimant engaged in activities that were inconsistent with the opinion." Tilton v. Colvin, 184 F. Supp. 3d 135, 145 (M.D. Pa. 2016).

In the instant case the ALJ fully explained the reasons for giving PA-C Yost's medical opinion less persuasive force, explaining that:

> The undersigned also considered the opinion from Heather Yost, PA.C. that the claimant could sit for 15 minutes at a time for a total of four hours, and stand/walk for 15 minutes at one time for a total of less than two hours. Ms. Yost further opined the claimant will need unscheduled breaks every two hours for 10 minutes. Ms. Yost stated the claimant could rarely lift up to 10 pounds, rarely twist, crouch or squat, occasionally climb stairs, and never stoop or bend or climb ladders. Ms. Yost, noted the claimant would be off task 25% or more during the workday, and absent from work more than four day per month (Exhibits 8F, 10F). The undersigned also considered the supplemental opinion from Ms. Yost in Exhibit 10F and finds that unpersuasive. Ms. Yost stated on May 14, 2019, that the limitations opined in Exhibit 8F applied as of July 16, 2017, based on visit with Dr. Passi in August 2017 where she stated her back pain started three weeks earlier. The undersigned finds the opinions from Heather Yost, PA.C. for the period from July 10, 2017, through March 31, 2018, is unpersuasive. During

> that relevant period, the physical findings on longitudinal examinations do not disclose debilitating findings. Her physical examinations consistently showed that she had some tenderness to palpation in the left paralumbar musculature and left SI joint, and with the extension of the left leg. However, she had no motor, sensory or reflex deficits noted, and findings showed no gait abnormality, other than the antalgic gait noted in the October 2017 visit where she reported the pain medications were helping her pain, and no documented use of an assistive device (Exhibits 2F, 4F). The limitations opined by Ms. Yost are not supported by physical findings at her own examinations, nor do they account for claimant's ability to work at her prior position, albeit on a part-time basis. While this work was not substantial gainful activity, it shows an ability to function. The physical demands of that work do not correlate with the extreme limitations provided. In addition, during this relevant period, she managed her own personal care, she prepared simple meals, cleaned, did laundry, drove, shopped, cared for the pets in her household, worked part time, and she enjoyed doing crafts, reading, and watching television, albeit all with limitations (Exhibit 5E, Hearing Testimony). The undersigned finds the longitudinal record supports that during the relevant period, the claimant could perform light work as outlined above.

(Tr. 851).

Substantial evidence—that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion—supported this medical opinion analysis. Therefore, we may not disturb this analysis on appeal. In sum, while we are sympathetic to the challenges the plaintiff has confronted, particularly those challenges which arise from exacerbation of her physical and emotional state after her date last insured, at bottom it appears that the plaintiff is requesting that this court re-weigh the evidence. This we may not do. See Chandler, 667 F.3d at 359 (citing

Richardson v. Perales, 402 U.S. 389, 401 (1971) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations"); see also Gonzalez v. Astrue, 537 F.Supp.2d 644, 657 (D. Del. 2008) ("In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of the record") (internal citations omitted)). Rather, our task is simply to determine whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce, 487 U.S. at 565. Finding that this deferential standard of review is met here, we conclude that a remand is not appropriate.

In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this

court acting *de novo* might have reached a different conclusion.'" Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case and will affirm that decision.

## IV. Conclusion

Accordingly, for the foregoing reasons, the final decision of the Commissioner denying this claim will be AFFIRMED.

An appropriate order follows.

*s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: August 17th, 2026